GERARDOT, APPELLEE, *v.* PARRISH, ADMR., APPELLEE
(PARRISH, INTERVENOR, APPELLANT).

[Cite as Gerardot v. Parrish (1975), 44 Ohio App. 2d 293.]

294

(No. 11-74-11—Decided April 11, 1975.)

*Messrs. Hyman, McMaster, Cook & Webb* and *Mr. Norman E. Cook*, for appellee Alpha Gerardot.
*Mr. John F. DeMuth*, for appellee Richard Parrish.
*Messrs. Shaw, Clemens, Williams & Nicol* and *Mr. Stephen F. Korhn*, for appellant Joseph Parrish.

GUERNSEY, J. The plaintiff, Alpha Gerardot, presented a claim to the defendant administrator of the estate of Pearl Parrish for monies advanced to or for the benefit of the decedent which he set forth in his schedule of claims as having been approved. Upon hearing the Probate Division, Court of Common Pleas of Paulding County, ordered the claim disallowed except to the extent of "a sum equal to the total of the promissory notes written by decedent in favor of Alpha Gerardot plus reasonable interest to date of payment." Plaintiff thereupon brought action in the General Division, Common Pleas Court of Paulding County on the entire claim. Sixteen days after the action was filed the defendant, Joseph Parrish, an heir of Pearl Parrish, moved to intervene as a party defendant. Upon the same day the court sustained the motion and the intervening defendant filed his answer admitting the jurisdictional facts and denying the original validity of the items of the claim, alleging part thereof to be outlawed by the statute of limitations, and alleging that "many of said claims should be disallowed under the provisions of Ohio Revised Code, Section 2317.03."

The defendant administrator never answered or otherwise joined issue on the complaint. Upon trial the plaintiff

testified, over objection of the defendant intervenor, as to the transactions between the decedent and herself upon which her claim was based and offered into evidence two promissory notes in which she was the payee and the decedent the maker, a document which in effect was an I.O.U. signed by the decedent and acknowledging the debt of a sum advanced by plaintiff for a television set purchased for decedent, and twenty five cancelled checks and various statements claimed by plaintiff as showing payments made on decedent's behalf. No objection was made to the admission of the two notes and the I.O.U. but all the remaining exhibits were admitted into evidence over the objection of the defendant intervenor.

Defendant administrator was called on cross-examination by the plaintiff and testified to the effect that he was the nephew of both the plaintiff and the decedent, who were sisters, that he had allowed plaintiff's claim because in his judgment it was a valid, allowable claim, and that, during the decedent's lifetime he had not had any conversation with the plaintiff concerning moneys furnished or advanced on behalf of the decedent. Plaintiff also called as witnesses a former tenant of decedent and the tenant's wife who each testified that to their knowledge money had been advanced by plaintiff to the decedent, that they had no knowledge of the specific amounts so advanced, and that decedent had made statements to the effect that plaintiff had advanced decedent so much money that decedent would have to die in order for it to be repaid. Plaintiff also called defendant intervenor on cross-examination but his testimony was confined to the kinship of the persons involved and to his conception of the credibility of the plaintiff.

Neither the defendant administrator nor the defendant heir offered any evidence and the court rendered judgment for the plaintiff and against the estate for the major part of the claim, excluding therefrom, however, items which it deemed barred by the statute of limitations or not proved by the evidence, but including the sums, with interest, evidenced by the two promissory notes and the I.O.U. Defendant intervenor filed his appeal from this judgment assigning error of the trial court in five particulars.

First Assignment of Error. "The Court erred in admitting inadmissible evidence offered by the plaintiff and the administrator, both parties to this action, and to which objection was made by appellant, said evidence being contrary to the requirements of Ohio Revised Code, Section 2317.03."

Second Assignment of Error. "The Court erred in admitting inadmissible evidence offered by the plaintiff to which objection was made by appellant in that the exhibits admitted into evidence herein did not qualify under the book account exception to the requirements of Ohio Revised Code, Section 2317.03."

Third Assignment of Error. "The Court erred in admitting inadmissible evidence offered by the plaintiff to which objection was made by appellant in that the administrator by testifying on behalf of the plaintiff could not thereby waive the requirements of Ohio Revised Code, Section 2317.03, when the appellant as an heir has assumed the position of the adverse party to plaintiff's claim "

These three assignments of error are founded on many of the same legal arguments and will be considered together. At the outset we must first determine the status of defendant intervenor because his status affects the relationship of the parties and the application of R. C. 2317.03, the dead man's statute. Plaintiff objected to the intervention before trial and still asserts that the defendant intervenor had no standing in the trial court because R. C. 2117.13 had not been complied with. R. C. 2117.13 applies to the rejection by an administrator of a claim on requisition of an heir, and R. C. 2117.14 makes such heir a necessary party to a suit thereafter filed on the claim. The record here does not show that any requisition was filed by the defendant intervenor with the defendant administrator to reject the plaintiff's claim so the defendant intervenor's right or obligation to become a party defendant to the suit filed in the trial court may not rest on the provisions of either R. C. 2117.13 or 2117.14. What then are his rights of intervention?

It is stated in 34 Corpus Juris Secundum 766, Executors and Administrators, Section 740b:

"In actions or suits by creditors of decedent to enforce their claims, persons may or must be brought in as parties defendant, depending on their interest in the controversy and their representation by other participants in the cause. As a general rule, proceedings to reach assets of the estate may and should include the personal representative as a party defendant; and it has been generally held that he is the only necessary or even proper party defendant to such actions or suits. Accordingly, plaintiff usually need not and should not join as defendants the widow or heirs or legatees, or distributees, or devisees, * * *. The heirs may, however, be permitted to come in and defend if the personal representative refuses or neglects to do so, * * *."

With respect to the last sentence of the foregoing quotation see also *Rine* v. *Rine*, 9 Neb. 248, 135 N. W. 1051.

Respecting all except the last sentence of the foregoing quotation, Ohio has for many years adhered to the general rule. In *Loney* v. *Walkey, Admr.*, 102 Ohio St. 18, the Supreme Court held:

"1. In an action brought against an administrator of an estate to recover specific personal property claimed by the plaintiff, no ground for relief being stated against the heirs of the decedent, they are neither proper nor necessary parties. If otherwise competent their testimony cannot be excluded by reason of the provisions of Section 11495, General Code [now R. C. 2317.03], though they be named as parties defendant."

With respect to heirs joined in the action Judge Matthias said at page 22 of the opinion:

"* * * The mere fact that they may subsequently have some interest or receive some portion of the estate of Julia A. Loney, on distribution, does not make them necessary or even proper parties to such proceeding. Had the situation been reversed, they could not as individuals have maintained the action against Elva L. Loney. (*McBride, Admr.*, v. *Vance*, 73 Ohio St., 258.) They are merely nominal parties, wholly unnecessary to the determination of the issues in the case .

"The language used by Scott, J., in *Wolf* v. *Powner*,

*supra* [30 Ohio St. 472], at page 476, is pertinent: 'We all concur in the opinion that the *parties* intended to be excluded from testifying by this section are the *real*, and not the mere *formal, nominal,* and wholly *unnecessary* parties.' ''

The conclusion that the heirs have no interest in the personal property of a decedent is based on earlier decisions of the Supreme Court, including the case of *McBride, Admr., v. Vance,* 73 Ohio St. 258, where it was held:

''1. As a general rule administration is a prerequisite to the devolution of the personal estate of a decedent.

''2. The personal property of a deceased persons does not vest in his heirs but is in abeyance until administration is granted and is then vested in the administrator by relation from the time of death, and no right of action on a promissory note belonging to a deceased person is shown by a party in an action on the note by proof of possession and that he is the sole heir of the decedent.''

We must conclude from these authorities that the intervenor defendant had no property right in the personal assets of the decedent's estate which made him either a necessary or proper party defendant. Parenthetically, we note that the record does not reveal what the decedent's personal assets were or whether plaintiff's claim could be paid only by a sale of decedent's real estate. Although, on page 57 of the transcript of proceedings, it appears that the trial court said that it would take judicial notice of the case record in the Probate Division, it could not properly do so, and that case record has thus not been brought into the record now here on appeal. A court may not take judicial notice of the record of a case in another court and ordinarily may not even take judicial notice of the record of another case in the same court.

An administrator has a duty to defend suits brought against the estate. In appropriate circumstances, where he fails to defend, an administrator may even be removed and another administrator appointed. Here under specific statutory provision in R. C. 2117.17, ''an order of the court disapproving the allowance of a claim shall have the same

effect as a rejection of the same on the date on which the claimant is served with notice of the court's order.'' Thus, when the Probate Division determined that plaintiff's claim should be disapproved (at least to the extent that same was not grounded on the promissory notes) it constituted a rejection of same raising in the administrator a duty to defend the decedent's estate against any suit brought on the rejected claim. This he did not do and has not done and without the appointment of another administrator or without the intervention of the defendant heir the estate assets would not have had the protection of an adversary proceeding.

We fully realize that the failure of the administrator to defend may not have been apparent at the time when the motion to intervene was sustained but the prejudice of error must be determined from the completed case and judgment. Our first quotation hereinbefore from 34 Corpus Juris Secundum supports a common law right of intervention when the administrator refuses or neglects to do so. Literal application of Civil Rule 24 would not seem to support an intervention as of right or permissively, primarily because the defendant heir has no interest in the personal assets of the estate. However, if we consider the matter as a substitution of the defendant heir for the administrator and determine the rights and duties involved as if the defendant heir were standing in the administrator's shoes, then none of the parties can be prejudiced by the intervention. Certainly, the defendant heir by reason of his intervention should have no greater rights than he would have had had the administrator defended. Nor should the action be any different in respect to procedure or rules of evidence than it would have been had the administrator defended.

We must then resolve the evidentiary issues as if the intervening defendant were not a party to the action and as if the administrator were actually the real adversary to the issues raised by plaintiff's complaint.

This brings us then to the specific evidentiary questions. The dead man's statute, R. C. 2317.03, prescribes, among other things:

"A party shall not testify when the adverse party * * * is an executor or administrator * * * of a deceased person except:

"(A) As to facts which occurred after the appointment of the guardian or trustee of an insane person, and, in the other cases, after the time the decedent * * * or testator died;

"* * *;

"(C) If a party, or one having a direct interest, testifies to transactions or conversations with another party, the latter may testify as to the same transactions or conversations;

"* * *;

"(F) If the claim or defense is founded on a book account, a party may testify that the book is his account book, that it is a book of original entries, that the entries therein were made in the regular course of business by himself, a person since deceased, or a disinterested person, and the book is then competent evidence in any case, without regard to the parties, upon like proof by any competent witness;

"* * *."

Without considering the exceptions set forth in the statute, since the intervenor defendant, the decedent's tenant, and the decedent's tenant's wife, were not parties to to the action in their own right or interest their testimony was competent regardless of by whom they were called.

The statute does not preclude the administrator from testifying except when the adverse party falls within one of the categories of adverse parties set forth in the first paragraph of the statute. The plaintiff creditor of the decedent does not fall within any of these categories. The defendant administrator was precluded from testifying voluntarily, not by the dead man's statute, but by reason of his duty, when the claim was disallowed, to defend the decedent's estate from the claim. Any testimony he might voluntarily offer in favor of the claimant would be, of necessity, inconsistent with such duty. This case does not come within the peculiar factual situation of the case of *Harrold, Admr.*, v. *Romick, Admr.*, 17 Ohio Law Abs. 467,

where the administrator who was permitted to voluntarily testify was not himself chargeable with the disallowance of the claim. Here the defendant administrator was called by the claimant on cross-examination and his testimony as to events before the death was merely that he had not then had any conversation with plaintiff concerning moneys furnished or advanced on behalf of decedent. Compare *Hickox* v. *Rogers*, 33 Ohio App. 97. This did not help plaintiff's case except as to her credibility and his further testimony that the claim was, in his judgment, a valid, allowable claim merely constituted a legal conclusion having no probative value. The estate could not have been substantially prejudiced by the testimony of the defendant administrator.

Nor did the defendant administrator by his failure to defend waive the protection of the dead man's statute so as to qualify the plaintiff as a witness respecting the transactions or conversations she had with decedent. Although an administrator may waive the protection of the statute, the cases support a conclusion that since the statute is for the protection of the estate, he may do so only when such waiver is by an affirmative, voluntary act usually in the best interests and to the benefit of the estate. The exception set forth in subdivision (C) of the statute appears to be applicable in the case of an administrator only when his action is voluntary and not when there is involuntary cross-examination. See, e. g., *Doughman* v. *Doughman*, 21 Ohio St. 658; *Stream* v. *Barnard*, 120 Ohio St. 206; and *Rankin* v. *Hannan*, 38 Ohio St. 438.

We thus are confronted with a case where the adverse party to the plaintiff is the defendant administrator and the intervention of the defendant heir, in effect in the shoes of the administrator, adds nothing to and does not detract from such adversity of parties. There is nothing in the situation which permits a conclusion that the administrator (or intervening defendant in his place) has waived the protection of the statute and nothing to show that the plaintiff's testimony as to facts which occurred before the decedent's death comes within any of the exceptions set forth in the statute. Nor does the documentary evidence constitute a book of original entries and thus a book account

admissible, or testimony of which is admissible, under subdivision (F) of the statute. We must, therefore, conclude that plaintiff's testimony as to facts which occurred before the decedent's death is incompetent under the statute and that the admissibility of all the exhibits, except the two notes and the I.O.U., resting solely on the foundation of such incompetent testimony such admissibility is likewise tainted.

For the foregoing reasons we find the first three assignments of error well taken. We note in passing that the trial court did not rest its decision on the admission of any of the documentary exhibits as constituting a book account as might be gathered from the manner in which the second assignment of error is framed.

Fourth Assignment of Error. "The judgment is contrary to law." Fifth Assignment of Error. "The judgment is not sustained by the evidence and is against the manifest weight of the evidence."

We consider these last two assignments of error together. There was no evidence in the record except the incompetent testimony of the plaintiff to sustain the admissibility of the documentary evidence other than the two notes and the I.O.U. Without such documentary evidence there was no evidence, except the notes and the I.O.U., of the amount of money advanced by plaintiff to the decedent. The testimony of the decedent's tenant and his wife had probative value only as to the fact that money was advanced and not as to the amount thereof, and could reasonably be confined in such probative value solely to the notes and the I.O.U. without extension to the other documentary evidence. Not being sustained by the evidence and being based on incompetent evidence the conclusion follows that the judgment, to the degree it does not pertain to the two promissory notes and the I.O.U., is contrary to law. Thus, the last two assignments of error are also well taken.

Except as to that part of the trial court's judgment allowing recovery to the plaintiff on the two promissory notes and the I.O.U. the judgment must be reversed and set aside.

*Judgment reversed.*

COLE, P. J., and MILLER, J., concur.